UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN M. TABORA,<br>        Plaintiff,<br>v.<br>DANIEL BOYD, et al.,<br>        Defendants. | Case No. 4:25-cv-00250-KAW<br><br>**ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND**<br><br>Re: Dkt. No. 22 |

On July 29, 2025, Defendants Daniel Boyd, Rony Flores, Prince Nagi, and Uriel Vazquez filed a motion to dismiss the second amended complaint. (Defs.' Mot., Dkt. No. 22.)

Upon review of the moving papers, the Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and, for the reasons set forth below, GRANTS the motion to dismiss without leave to amend because any amendment would be futile.

## I. BACKGROUND

### A. Factual Background

This case is related to the earlier filed *Machado v. Boyd,* No. 24-cv-03525-KAW (N.D. Cal. May 9, 2025), ECF No. 40 ("Machado Dismissal Order"), and the facts set forth in that order are incorporated as if fully set forth herein.

In sum, Plaintiff Karen M. Tabora, a process server, accompanied her client Enmanuel Isaías Erazo Machado to Sonoma County, California to serve custody papers on Machado's ex, Bessy Murillo, with whom he shares two children. Murillo allegedly took Machado's children to California in violation of their custody agreement.

On April 19, 2023, Plaintiff served custody papers on Murillo to appear in court in Liberty County, Texas. (First Am. Compl., "FAC," Dkt. No. 15 ¶¶ 12-13.) On April 20, 2023, before

returning to Texas, Machado visited his children, and, during that visit, Murillo's boyfriend threatened Machado regarding his visitation rights. (FAC ¶ 14.) Purportedly relying on legal advice that the children should be immediately removed from the "threatening environment," Machado departed for Texas with his children, while Tabora remained in the vehicle. (FAC ¶ 15.)

A 911 call was made, and Defendants Boyd and Flores procured arrest warrants for Machado and Plaintiff, executed by a judge of the Sonoma County Superior Court. (Defs.' Request for Judicial Notice, "Defs.' RJN," Dkt. No. 27-1, Exs. A & B.) The warrant found that probable cause existed to believe that Plaintiff and Machado had violated California Penal Code § 207 (Kidnapping). (Defs.' RJN, Exs. A & B.) Machado and Plaintiff were later arrested in Los Banos, California,[1] and Plaintiff contends that the warrants lacked probable cause. (FAC ¶ 17.)

On May 1, 2023, Plaintiff was released from custody and permitted to return to Texas pending trial. (*See* FAC ¶ 19.) On March 22, 2024, all charges against Plaintiff and Machado were dismissed. (FAC ¶ 20.)

### B. Procedural Background

On June 11, 2024, Machado filed a lawsuit alleging civil rights violations against Defendant Petaluma Police Department and Petaluma Police Officers Daniel Boyd, Prince Nagi, Rony Flores, and Uriel Vazquez. *Machado v. Boyd,* No. 24-cv-03525-KAW (N.D. Cal.), ECF No. 1 ("The *Machado* Action"). On May 9, 2025, the *Machado* Action was dismissed both on the grounds that Machado failed to state any cognizable claims, and because the officers were entitled to qualified immunity on both the state and federal claims. (Machado Dismissal Order at 12-13, 16.)

On January 7, 2025, Plaintiff filed the instant lawsuit regarding the same underlying incident, and did so against Petaluma Police Officers Daniel Boyd, Prince Nagi, Rony Flores, and Uriel Vazquez, which was related to the *Machado* Action. On April 26, 2025, Plaintiff filed the first amended complaint. (FAC, Dkt. No. 15.)

---

[1] Plaintiff alleges that Defendants Boyd and Flores arrested her and Machado at gunpoint in Los Banos, but it was established in the lower-numbered case that the arrest was made by the California Highway Patrol. (Machado Dismissal Order at 2.)

On July 29, 2025, Defendants filed the instant motion to dismiss. (Defs.' Mot., Dkt. No. 22.) On August 21, 2025, Plaintiff filed an opposition. (Pl.'s Opp'n, Dkt. No. 27.) On August 28, 2025, Defendants filed a reply. (Defs.' Reply, Dkt. No. 29.)

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility

1  and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at
2  557) (internal citations omitted).
3      Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no
4  request to amend is made "unless it determines that the pleading could not possibly be cured by
5  the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations
6  omitted).

### B. Request for Judicial Notice

As a general rule, a district court may not consider any material beyond the pleadings in ruling on a motion to dismiss for failure to state a claim. *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001). A district court may take notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Bernal–Obeso,* 989 F.2d 331, 333 (9th Cir. 1993). "[A] court may take judicial notice of 'matters of public record,'" *Lee*, 250 F.3d at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

### III. DISCUSSION

### A. Request for Judicial Notice

As a preliminary matter, Defendants asks that the Court take judicial notice of two documents in support of their motion to dismiss. (Defs.' Req. for Judicial Notice, " Defs.' RJN," Dkt. No. 22-1.) The documents are purportedly true and correct copies of: A) Machado Arrest Warrant, issued by Superior Court of California for the County of Sonoma on April 20, 2023 by Judge Lawrence Ornell for the arrest of Enmanuel I. Erazo-Machado, finding probable cause to

believe that Erazo-Machado committed violations of California Penal Code §§ 422(a) (Threaten Crime with Intent to Terrorize), 207 (Kidnapping), 459 (Burglary), and 242 (Battery); B) Tabora Arrest Warrant, issued by the Superior Court of California for the County of Sonoma on April 20, 2023 by Judge Lawrence Ornell for the arrest of Plaintiff Karen M. Tabora, finding probable cause to believe that Plaintiff committed a violation of California Penal Code § 207 (Kidnapping). (Defs.' RJN at 1, Exs. A & B.)

Under Rule 201, facts appropriate for judicial notice are those "not subject to reasonable dispute" in that they are either (1) "generally known within the trial court's territorial jurisdiction" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice may be taken "of court filings and other matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). This includes both arrest warrants and search warrants. *See, e.g., Cooley v. City of Walnut Creek*, No. 18-CV-00719-YGR, 2019 WL 1533430, at *2 (N.D. Cal. Apr. 9, 2019) (judicial notice taken of existence of arrest warrant and statement of probable cause and filing date.)

Since Defendants' Exhibits A and B are arrest warrants issued by a Sonoma County Superior Court judge, the Court finds that they are properly subject to judicial notice. While their validity may be disputed, it is undisputed that they were issued. Thus, the Court GRANTS Defendants' request for judicial notice.

In support of her opposition, Plaintiff purportedly requests that the Court take judicial notice of five documents. (*See* Pl.'s Req. for Judicial Notice, "Pl.'s RJN," Dkt. No. 28.) There are, however, more than five documents attached and none of them are marked. *See ids*. Moreover, only one appears to be contemporaneous to the incident, and that is a process server affidavit Plaintiff signed on April 19, 2023, and it is not clear on the face of the document which document was served. (*See* Dkt. No. 23-2 at 1.) Regardless, since these documents are not needed to resolve the pending motion, Plaintiff's request for judicial notice is DENIED.

**B.    Motion to Dismiss**

    **i.    Claims Generally**

Ultimately, Plaintiff's lawsuit suffers from the same underlying deficiencies as Mr.

5

1  Machado's, and the analyses and findings set forth in that order are incorporated as if fully set
2  forth herein. (Machado Dismissal Order at 6-16.) In sum, there are no facts to suggest that
3  Defendants knew at the time of the incident that Machado had a valid child custody order or that
4  the information conveyed during the 911 call, which provided the legal and factual basis for
5  probable cause to arrest Machado and Plaintiff for kidnapping, may have been false. Indeed,
6  Plaintiff acknowledges that she was present in the vehicle when Machado took his children, which
7  supports the kidnapping charge. (*See* FAC ¶ 15.) Despite Plaintiff's contentions to the contrary,
8  there are no allegations about the investigation or the arrest that "shocks the conscience." (*See*
9  Pl.'s Opp'n at 5.) The fact that the charges were dropped does not, without more, give rise to a
10 constitutional violation or state law claim.

11 Accordingly, the Court dismisses all of the causes of action for failure to state a claim
12 under Rule 12(b)(6) for the same reasons it did so in the *Machado* Action.

### ii. Qualified Immunity

14 To the extent that the claims may not be completely disposed of on the merits, the Court
15 finds that Defendants are entitled to qualified immunity, and are, therefore, not subject to liability.

#### a. Section 1983 Claims

17 Defendants argue that they are entitled to qualified immunity, because, based on the facts
18 alleged in the operative complaint and in the arrest warrant, "no reasonable officer would have
19 considered their actions wrongful in arresting Plaintiff." (Defs.' Mot. at 17.)

20 "The doctrine of qualified immunity shields officials from civil liability so long as their
21 conduct 'does not violate clearly established statutory or constitutional rights of which a
22 reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam).
23 When a qualified immunity defense is raised on a motion to dismiss, courts should consider
24 "whether the complaint alleges sufficient facts, taken as true, to support the claim that the
25 officials' conduct violated clearly established constitutional rights of which a reasonable offic[ial]
26 would be aware in light of the specific context of the case." *Keates v. Koile,* 883 F.3d 1228, 1235
27 (9th Cir. 2018).

28 Here, Defendants had probable cause to arrest Plaintiff and Machado for kidnapping his

1  children. *See* discussion, *supra,* Part III.B.i.  To the extent that Machado had a valid custody order,
2  there appeared to be an ongoing kidnapping, in which Plaintiff and Machado were attempting to
3  leave the state, which injected urgency that left no time to investigate the pending family law case
4  in Texas.  As was the case with the *Machado* Action, Plaintiff was unable to cite to a single case
5  indicating that it was clearly established that it is unconstitutional to seek an arrest warrant for a
6  suspect in a reported kidnapping, or to effectuate the arrest of that suspect, before investigating
7  any pending family law matters. To the contrary, generally, we "want law enforcement to be
8  proactive and persistent in investigating a potential ongoing kidnapping" even if they are
9  ultimately mistaken. *Hill v. City of Fountain Valley*, 70 F.4th 507, 517 (9th Cir. 2023) (officers
10 entitled to qualified immunity on unlawful arrest claim despite mistaking the plaintiff for
11 suspected kidnapper).

12    Thus, Plaintiff has not offered any factually analogous case "clearly establishing" that
13 Defendants' actions were unlawful under the circumstances.  Accordingly, Defendants are entitled
14 to qualified immunity for the § 1983 claims.

           b.   <u>State Law Claims</u>

16    Moreover, Defendants argue that Defendants are immune from liability for state law
17 claims pursuant to Government Code §§ 820.2 and 821.6, which immunizes them for their
18 discretionary actions and for actions such as reporting or investigating a crime. (Defs.' Mot. at 23.)
19    In opposition, Plaintiff argues that § 820.2 does not shield operational misconduct like
20 illegal arrest or force, and that § 821.6 covers only advocacy, rather than evidence fabrication or
21 beating. (Pl.'s Opp'n at 7.)
22    California Government Code § 820.2 grants public employees immunity from any injury
23 resulting from the exercise of the discretion vested in them.  This applies to police officers'
24 discretionary decisions to investigate a complaint following a 911 call. *See Blankenhorn v. City of*
25 *Orange*, 485 F.3d 463, 487 (9th Cir. 2007).  Thus, Defendants are entitled to immunity for their
26 criminal investigation of Plaintiff.
27    As Plaintiff argues, the general purpose of § 821.6, however, is to immunize prosecutors
28 from the tort of malicious prosecution. *Leon v. Cnty. of Riverside*, 14 Cal. 5th 910, 921 (2023).

1  While Defendants contend that § 821.6 further immunizes Defendants for their involvement in
2  complaining about and/or investigating allegations of wrongdoing, the Court again disagrees. (*See*
3  Machado Dismissal Order at 16.)  Indeed, the California Supreme Court held that this section does
4  not protect investigators from liability, because "the conduct of an investigation, without more, is
5  not an actionable institution or prosecution of a legal action." *Leon,* 14 Cal. 5th at 921. Thus, §
6  821.6 does not confer immunity for the investigation itself.

Nonetheless, Defendants remain separately immune from liability for Plaintiff's state law claims under Government Code § 820.2.

### IV.   CONCLUSION

For the reasons set forth above, the motion to dismiss is GRANTED in full and without leave to amend, because any amendment would be futile.  Judgment in favor of Defendants will be entered separately.

IT IS SO ORDERED.

Dated: December 22, 2025

_____
KANDIS A. WESTMORE
United States Magistrate Judge